**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>FRED DEUTSCH,<br><br>Debtor. | **FOR PUBLICATION**<br><br>Chapter 7<br>Case No. 15-13369 (MG) |
| PARKLEX ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>FRED DEUTSCH,<br><br>Defendant. | Adv. Pro. No. 16-01217 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DISCHARGE TO THE DEBTOR UNDER
SECTION 523 OF THE BANKRUPTCY CODE**

*A P P E A R A N C E S:*

THE SCHER LAW FIRM, LLP
*Attorney for Plaintiff Parklex Associates*
One Old Country Road, Suite 385
Carle Place, NY 11514
By:    Austin Reis Graff, Esq.

FRED DEUTSCH
*Pro se Defendant*

1

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before this Court is the motion for summary judgment (the "Motion," ECF Doc. # 22) filed by Parklex Associates ("Parklex," or the "Plaintiff"), the Plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), seeking a determination that Fred Deutsch's ("Deutsch," or the "Defendant") debt to the Plaintiff is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A); (a)(4); and (a)(6). (Complaint (ECF Doc. # 1) ¶¶ 33–49.)

On March 26, 2012, Parklex obtained a default judgment (the "Default Judgment") against Deutsch in state court in New York (the "State Court Action") in the amount of $44,163,637.53. (Motion at Ex. J.) The Default Judgment was entered <u>after</u> Deutsch answered the complaint – and defended the State Court Action for a time – before abandoning the defense after the filing of the fourth amended verified complaint in the State Court Action (the "Fourth Amended Complaint"), at which time the Default Judgment was entered and a three-day damages inquest (the "Damages Inquest," Motion at Ex. C–E) was held.

Deutsch argues that he should not be collaterally estopped from denying the circumstances and amount of the Default Judgment because (1) state law controls the issue of collateral estoppel, (2) pursuant to New York law, he did not have a full and fair opportunity to defend or contest the State Court Action or Default Judgment, and (3) there was no finding of fraud in the State Court Action or in any case in which Deutsch was a party. (Defendant's Letter at 1.)

As discussed below, the Court concludes that the Default Judgment is entitled to preclusive effect, such that under New York law, collateral estoppel applies. Defendant made a conscious decision to stop defending the State Court Action upon filing of the Fourth Amended Complaint. (*See* Plaintiff's MOL at 6.) Deutsch, by failing to answer the Fourth Amended

2

Complaint, thereby admitted all well-pled allegations in the Fourth Amended Complaint,

including the basic allegations of liability.  In reaching this conclusion, the Court relies solely

upon the Default Judgment and Deutsch's decision to stop defending the State Court Action, and

does not rely upon, nor give any weight or authority to, other state court decisions involving

Deutsch.[1]  Deutsch is collaterally estopped by the Default Judgment from challenging the factual

allegations set forth in the Fourth Amended Complaint.

This Court further concludes that the factual allegations set forth in the Fourth Amended

Complaint and the circumstances surrounding the State Court Action satisfy all of the elements

of a claim under sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code.  Because the Court

finds two independent bases for the nondischargeability of debt under those sections, the Court

finds it unnecessary to analyze the Plaintiff's section 523(a)(6) claim for willful and malicious

conduct.  Similarly, the Court need not conduct a separate inquiry as to the amount of damages

the Plaintiff is owed.  As discussed below, the three-day Damages Inquest held after the Default

Judgment was entered satisfies this Court's need to conduct an independent inquest on damages.

Consequently, the Plaintiff's Motion is **GRANTED**.

## I.    BACKGROUND

### A.    Involuntary Bankruptcy Case and Adversary Proceeding

On December 28, 2015, an involuntary bankruptcy case (the "Involuntary Case") was

filed against Deutsch by petitioning creditors Steven Minn, Lupe Development Partners, LLC,

and Parklex.  (ECF Doc. # 1, Case No. 15-13669.)  Deutsch appeared in the Involuntary Case by

---

[1]    Counsel for Plaintiff brought to the Court's attention the New York Supreme Court's decision in *Parklex Assoc. v. Royal Capital Mkts. Corp.*, 959 N.Y.S. 2d 91 (Sup. Ct. 2012) (the "RBCCM Case") to "illuminate[] and explain[] the basis for the Court's issuance of the $44 million judgment against the Defendant."  (Plaintiff's MOL at 5.)  Although replete with colorful language about the malfeasances of Deutsch, Deutsch properly noted that he was not a party to the RBCCM Case.  Deutsch also alleges that he was not made aware of, called to testify, or called for a deposition in the RBCCM Case.  This Court's decision applying collateral estoppel, and the factual findings necessary for the nondischargeability of debt, do not arise from the RBCCM Case, but rather from the Default Judgment and State Court Action.

his attorney, Gerard DiConza, on February 12, 2016. (ECF Doc. # 8, Case No. 15-13669.)

Deutsch also filed a *Motion for an Order Abstaining from and Dismissing the Involuntary Case*

*Pursuant to Section 305(a) of the Bankruptcy Code, or in the Alternative, Dismissing the*

*Involuntary Case Pursuant to Section 707(a) of the Bankruptcy Code and Rule 1017(a) of the*

*Federal Rules of Bankruptcy Procedure* (the "Motion for Abstention and Dismissal") (ECF Doc.

# 11, Case No. 15-13669). On April 26, 2016, this Court entered an order denying the Motion

for Abstention and Dismissal of the Involuntary Case. (ECF Doc. # 29, Case No. 15-13669.)

A Clerk's Certificate of Default was entered in this Adversary Proceeding on December

5, 2016, because Deutsch failed to timely respond to the adversary complaint. (ECF Doc. # 12.)

Deutsch, who is not represented by counsel in this Adversary Proceeding, filed a letter dated

March 13, 2017, requesting that he be given two additional weeks to answer the adversary

complaint. (ECF Doc. # 15.) The letter set forth Deutsch's contentions why he believed he had

meritorious defenses to the Adversary Proceeding. (*Id.*) Because this Court preferred that the

proceedings be decided on the merits rather than by (another) default, the Court denied the

motion for entry of default judgment in this Adversary Proceeding, and required Deutsch to file

his answer by March 27, 2017. (ECF Doc. # 16.) Deutsch filed his answer on March 27, 2017.

(ECF Doc. # 18.)

As noted, pending before this Court is the Plaintiff's Motion for summary judgment.

(ECF Doc. # 22.) In support of the Motion, the Plaintiff filed a *Memorandum of Law in Support*

*of the Motion for Summary Judgment* (the "Plaintiff's MOL," ECF Doc. # 23), and a *Statement*

*of Undisputed Facts in Support of Motion for Summary Judgment* (the "Plaintiff's Facts," ECF

Doc. # 24). On June 6, 2017, Deutsch filed a *Letter in Lieu of a Formal Memorandum of Law*

(the "Defendant's Letter," ECF Doc. # 28). Deutsch's letter incorporated a response to the

Plaintiff's Facts.  (*See* Defendant's Letter at 5–7.)  In response, the Plaintiff filed an *Affirmation in Reply* (the "Plaintiff's Reply," ECF Doc. # 29).  The Fourth Amended Complaint was attached as <u>Exhibit O</u> to the Plaintiff's Reply.  (Plaintiff's Reply at Ex. O.)

### B.      The State Court Action

The Court deems as admitted by Deutsch the following facts detailed in the Fourth Amended Complaint.  On or about May 11, 2006, Plaintiff and its limited partners (the "Limited Partners") commenced the State Court Action in the New York State Supreme Court, Kings County under index number 14514/2006 seeking an accounting for Plaintiff's assets and causes of action for breach of fiduciary duty.  (Fourth Amended Complaint ¶ 14.)

The State Court Action stemmed from a dispute over property purchased by Parklex. Parklex was intended to be a financial investment opportunity with attendant tax benefits, and was formed to acquire, own and operate a seventeen story office building at 114 East 32nd Street, New York, NY (the "Parklex Property").  (Plaintiff's Facts ¶ 7; Fourth Amended Complaint ¶¶ 38–39.)  Parklex issued a confidential private placement memorandum to potential investors, offering them an opportunity to become a limited partner in Parklex, and set forth the representations to potential investors that a principal benefit would be to receive tax deductions to a potential limited partner's income.  (Fourth Amended Complaint ¶¶ 37, 40.)

In September 1983, a partnership agreement was entered into by Parklex Associates, Inc. ("Parklex Corporation"), as general partner of the partnership, and the Limited Partners deciding to invest in the partnership (the "Partnership Agreement").  (*Id*. ¶ 50.)  At the time, Parklex Corporation was Parklex's general partner.  (*Id*. ¶ 41.)  At the closing of the purchase of the Parklex Property, Parklex executed a Wrap Around Mortgage Note (the "Wrap Note") and Wrap

Around Mortgage (the "Wrap Mortgage," and together with the Wrap Note, the "Wrap") in the amount of $7.37 million.  (*Id.* ¶ 60.)

On August 6, 1991, Parklex sent a letter of intent to Deutsch offering to sell him all of the outstanding common stock of Parklex Corporation, all rights, title and interest of R & K Realty Associates (the holder of the Wrap), and all rights, title and interest to the management agreement of Redevco Management Company – the management company for the Parklex Property.  (*Id.* ¶ 68.)

On August 26, 1991, Parklex informed all of the Limited Partners that Deutsch – through one or more corporations – would be acquiring the outstanding shares of Parklex Corporation as well as the Wrap and management agreement.  (*Id.* ¶ 69.)  This transaction was intended as a mechanism to avoid adverse tax consequences to the Limited Partners.  (*Id.* ¶ 70.)  Deutsch subsequently became president and treasurer of Parklex Corporation upon Parklex's first limited partner and shareholder selling his shares in Parklex Corporation.  (*Id.* ¶¶ 78–79.)

On July 21, 1992, Parklex wrote to its Limited Partners informing them of Deutsch's completion of his takeover as general partner of Parklex.  (*Id.* ¶ 85.)  The Parklex letter described a dire financial situation regarding the Parklex Property and the building and assets of Parklex (*Id.* ¶ 86.)  Parklex Corporation also wrote to the Limited Partners that, as a result of this dire financial situation, it appeared that the Parklex Property's value was less than its mortgage and, to the extent the Limited Partners believed they had equity in the building, such equity was extinguished.  (*Id.* ¶ 87.)  Notwithstanding these representations, the Parklex Property continued to generate millions of dollars that were paid to the companies owned and dominated by Deutsch from Parklex accounts.  (*Id.* ¶ 88.)

From 1983 through 1995, Parklex's Limited Partners received yearly K-1 tax statements for Parklex that permitted them to report the tax consequences of their interest in Parklex.  (*Id*. ¶ 89.)  From 1995 through 2005, Parklex's Limited Partners did not receive any K-1 tax statements, even after attempts to obtain copies of the statements from, among others, Parklex, Deutsch, and Parklex Corporation.  (*Id*. ¶¶ 90, 92.)  Copies of the statements from the years 2002 through 2004 were sent to one of Parklex's Limited Partners, but these K-1 forms were fraudulent and never filed with the Internal Revenue Service.  (*Id*. ¶¶ 94-95.)

In or about May 2006, certain Limited Partners discovered that Parklex sold the Parklex Property (the "Sale").  (*Id*. ¶¶ 107-108.)  The Limited Partners did not receive any notices, consent forms, or disclosure from Parklex, Parklex Corporation, or Deutsch in regards to the Sale.  (*Id*. ¶¶ 109, 110.)  The first communication the Limited Partners received was on or about May 30, 2006, when some of Parklex's Limited Partners received what Deutsch stated was a partial payment from the proceeds of the Sale.  (*Id*. ¶ 111.)

On May 8, 2006, Deutsch signed a letter, on behalf of Parklex Corporation as Parklex's general partner, authorizing Fidelity National Title Insurance Company ("Fidelity"), the title company insuring title for the purchaser, to distribute the proceeds of the Sale of the Parklex Property.  (*Id*. ¶ 118.)  Deutsch, as president of Parklex Corporation, instructed Fidelity to wire transfer $4,500,000.00 to Chicago Deferred Exchange Corporation ("Chicago").  (*Id*. ¶ 119.)  Deutsch, as president of Parklex Corporation, also instructed Fidelity to wire transfer $6,097,104.63 to Chicago (the "Target Property #2 Monies").  (*Id*. ¶ 121.)

The Target Property #2 Monies were to be used by Parklex, through Deutsch, to purchase a second property in an IRC § 1031 Exchange.  (*Id*. ¶ 122.)  Neither Parklex nor Deutsch completed the proposed purchase of the second property.  (*Id*. ¶ 123.)  On June 27, 2006,

Deutsch authorized RBC Dain Rauscher ("RBC Dain") to transfer over $4,000,000.00 to

Collateral LLC.  (*Id*. ¶ 125.)

On June 29, 2006, the New York State court issued a temporary restraining order,

restraining and enjoining the monies held in the name of Parklex and Parklex Corporation.  (*Id*. ¶

126.)  Nevertheless, on June 30, 2006, Deutsch authorized RBC Dain to transfer $1,000,000.00

from RBC Dain to an account in the name of Parklex.  (*Id*. ¶ 127.)  Deutsch, as president of

Parklex Corporation, also instructed Fidelity to wire transfer $23,080,351.63 to FAL Associates,

LLC ("FAL Monies") in an account at JP Morgan Chase ("JP Morgan").  (*Id*. ¶ 129.)

From May 2006 through June 2006, Deutsch used the FAL Monies for his own benefit.

(*Id*. ¶ 130.)  In July 2006, Deutsch directed JP Morgan to transfer $20,000,000.00, or the

remaining balance of the FAL Monies, to RBC Dain into an account of DB Partners I, LLC.  (*Id*.

¶ 131.)  Deutsch, as president of the Parklex Corporation did not instruct Fidelity to distribute

any monies to Parklex's Limited Partners, nor did he instruct Fidelity to distribute any monies to

Parklex or Parklex Corporation.  (*Id*. ¶¶ 133–34.)

On or about May 26, 2006, Deutsch distributed $1,683,000.00 to Parklex's Limited

Partners.  (*Id*. ¶ 136.)  Parklex Corporation and Deutsch also authorized Parklex Corporation to

be paid $17,000.00 from the proceeds of the Sale.  (*Id*. ¶ 137.)  Deutsch or his agent, or Parklex

Corporation or its agent, allegedly mailed checks totaling $1,683,000.00 to Parklex's Limited

Partners at Parklex's Limited Partners last known addresses.  (*Id*. ¶ 138.)  However, several of

Parklex's Limited Partners did not receive the checks allegedly mailed to them because the last

known address was incorrect as they had not been updated in ten years, which was the last time

Deutsch and Parklex Corporation attempted to communicate with Parklex's Limited Partners.

(*Id*. ¶ 139.)

## II.    LEGAL STANDARD

### A.    Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Issues of non-material fact, however, will not prevent a court from awarding a party summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (stating that "the mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact") (emphasis in original). Facts are material if they "might affect the outcome of the suit under the governing law." *Overton v. New York State Div. of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004) (quoting *Liberty Lobby*, 477 U.S. at 248) (internal quotation marks omitted).

On a motion for summary judgment, the movant bears the initial burden to offer evidence that satisfies "each material element of his claim or defense, demonstrating that he is entitled to relief." *Isaac v. City of New York*, 701 F. Supp. 2d 477, 485 (S.D.N.Y. 2010). Once the movant has made this initial showing, the nonmoving party must provide evidence of a genuine issue of fact in order to successfully oppose the motion. *Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Liberty Lobby*, 477 U.S. at 248, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* at 249; *Adickes v. S. H. Kress & Co.*, 398 U.S.

9

144, 157 (1970).  If the nonmoving party is unable to provide evidence of a genuine issue of

material fact, "the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

### B.    Preclusive Effect Of State Court Judgments in Federal Court

"The law is well settled that a state court judgment must be given preclusive effect, at

least for collateral estoppel purposes, in a subsequent federal court proceeding if the state in

which the judgment was rendered would do so."  *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110,

117 (Bankr. S.D.N.Y. 2008).  In *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373,

380 (1985), the Supreme Court stated:

> [28 U.S.C. § 1738] directs a federal court to refer to the preclusion law of
> the State in which judgment was rendered.  It has long been established that §
> 1738 does not allow federal courts to employ their own rules of res judicata in
> determining the effect of state judgments.  Rather, it goes beyond the common
> law and commands a federal court to accept the rules chosen by the State from
> which the judgment is taken.  Section 1738 embodies concerns of comity and
> federalism that allow the States to determine, subject to the requirements of the
> statute and the Due Process Clause, the preclusive effect of judgments in their
> own courts.

This Court in *Shiver* held that collateral estoppel can apply in a denial of discharge

adversary proceeding specifically where the state court judgment entered was a default

judgment.  396 B.R. at 119 ("[T]here is no logical reason why different rules apply to default

judgments.  Controlling case law from the Second Circuit . . . makes this point abundantly clear.

Three Second Circuit cases hold that state law controls issue preclusion in bankruptcy cases

whether the state court judgment arose from a fully litigated case or from a default judgment.")

(citing *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir. 1987); *Giaimo v. DeTrano (In re

DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006)).

Therefore, it is necessary to look to New York State law and its collateral estoppel rules to

determine whether a default judgment would be given preclusive effect.

In New York, collateral estoppel prevents a party from re-litigating an issue where (1) the identical issue was decided in the prior action and is decisive of the present action, and (2) the party had a full and fair opportunity to contest the prior determination. *See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985).

In *Rokina Opt. Co. v. Camera King*, 63 N.Y.2d 728, 729 (1984), after the defendant answered the complaint, but subsequently failed to answer a set of interrogatories, the plaintiff sought an order striking the defendant's answer, and a default judgment was granted in favor of the plaintiff. A trial was then held solely on the issue of amount of damages, whereby the defendant was limited in the evidence to be taken at the trial establishing the reasonable value of damages. *Id* at 729–30. On appeal, the issue was whether preclusive effect could be given to the state court default judgment that, in effect, limited the rights of the defendant to establish, or defend against, the amount of damages. *Id*. The New York Court of Appeals held preclusive effect applied, but that "unless the damages sought in an action are for a sum certain or for a sum which can by computation be made certain, judgment against a defaulting party may be entered only upon application to the court along with notice to the defaulting party and a full opportunity to cross-examine witnesses, give testimony and offer proof in mitigation of damages." *Id*. (citations omitted).

In other words, a defendant subject to a default judgment "admits all traversable allegations in the complaint, including the basic allegation of liability, but does not admit the plaintiff's conclusion as to damages." *Id*. (citation omitted); *see also In re Amanat*, 321 B.R. 30, 37 (Bankr. S.D.N.Y. 2005) (citing *Rokina* and noting that New York law permits a party to enforce un-stayed default judgments, subject to an inquest on damages). However, where an inquest on damages occurred in the state court, pursuant to New York law, such judgment is

11

valid and enforceable – including the determination of damages – and is subject to preclusive effect in this Court. *See Amanat*, 321 B.R. at 37 ("[T]he State Court entered an order on liability and a judgment after an inquest on damages (at which [defendant] was represented). Thus, pursuant to New York law, [plaintiff's] judgment is valid and enforceable.").

In *Evans*, the Second Circuit likewise held that a judgment obtained by a creditor in New York State court, grounded in fraud and imposing punitive damages, precluded re-litigation in bankruptcy court and concluded that New York courts give collateral estoppel effect to default judgments. 469 F.3d at 282–83. This Court has previously questioned that decision in regards to "pure defaults" where a defendant never responds to the complaint or appears in the action. *See Vyshedsky v. Soliman (In re Soliman)*, 515 B.R. 179, 185, 187 (Bankr. S.D.N.Y. 2014) (citing *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 667 (1990); *Halyalkar v. Bd. of Regents of N.Y.*, 72 N.Y.2d 261, 267–68 (1988); *Kaufman*, 65 N.Y.2d at 456–57). However, in *Soliman*, this Court also noted that where a defendant appeared and defended the action for a period, but later abandoned the defense, "the issues of notice and service of pleadings is less of a concern." 515 B.R. at 187.

### C.    Nondischargeability of Debts Under Section 523

"A bankruptcy discharge covers all prepetition debts, other than debts expressly excepted from discharge by section 523 of the Bankruptcy Code. Consistent with the Bankruptcy Code's fresh start policy, courts nevertheless construe the exceptions enumerated in section 523 narrowly against the creditor in favor of the debtor." *Vyshedsky v. Soliman (In re Soliman)*, 539 B.R. 692, 699 (Bankr. S.D.N.Y. 2015).

#### 1.  Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses or

actual fraud . . . ."  Thus, to object to the discharge of a debt under section 523(a)(2)(A), a creditor must show that:

      i.    The debtor made a false representation;

     ii.    At the time the representation was made, the debtor knew it was false;

    iii.    The debtor made the representation with intent to deceive the creditor;

    iv.    The creditor justifiably relied on the representation; and

     v.    The creditor sustained loss or damage as a proximate consequence of the false representation.

*Chase Bank, USA, N.A. v. Vanarthos (In re Vanarthos)*, 445 B.R. 257, 262 (Bankr. S.D.N.Y. 2011); *see also Owens v. Owens (In re Owens)*, 2005 WL 387258, at *1–2 (Bankr. S.D.N.Y. 2005); *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 71–72 (Bankr. S.D.N.Y. 1999); *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 422 (Bankr. S.D.N.Y. 1991).  The creditor bears the burden of proving these elements by preponderance of the evidence.  *See Grogan v. Garner*, 498 U.S. 279, 286 (2002).

In interpreting the elements of section 523(a)(2)(A), "[t]he Court looks to the common law of torts, as embodied in the Restatement (Second) of Torts."  *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 130 (Bankr. S.D.N.Y. 2007).  For purposes of applying section 523(a)(2)(A), a "false representation means that "(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant."  *Frishberg v. Janac* (*In re Janac*), 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009).  Omissions of fact can qualify as false representations: "[a] false representation can be shown through either an express statement or through an omission where the circumstances are such that disclosure is necessary to correct what would otherwise be a false impression."  *Signature Bank v. Banayan* (*In re Banayan*), 468 B.R. 542, 574–75 (Bankr. N.D.N.Y. 2012) (citations omitted); *see also*

RESTATEMENT (SECOND) OF TORTS § 529 (1976) ("A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation.").  It does not matter whether the debtor believes that the undisclosed fact is material.  *See* RESTATEMENT (SECOND) OF TORTS § 529, *cmt. b* (1976) ("Whether or not a partial disclosure of the facts is a fraudulent misrepresentation depends upon whether the person making the statement knows or believes that the undisclosed facts might affect the recipient's conduct in the transaction in hand.  It is immaterial that the defendant believes that the undisclosed facts would not affect the value of the bargain he is offering.  The recipient is entitled to know the undisclosed facts in so far as they are material and to form his own opinion of their effect.").

In addition, under section 523(a)(2)(A)(ii), a debtor's "intent to deceive" need not be express, as "intent may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that [he] did intend to deceive and cheat the [creditor]."  *Hong Kong Deposit and Guar. Co. v. Shaheen* (*In re Shaheen*), 111 B.R. 48, 53 (S.D.N.Y. 1990) (citations omitted); *see Voyatzoglou v. Hambley* (*In re Hambley*), 329 B.R. 382, 396–97 (Bankr. E.D.N.Y. 2005) ("[I]t is well established that intent to deceive may be established through circumstantial evidence and inferred from the totality of the evidence presented.").  This Court has held that intent to deceive under section 523(a)(2) can also be satisfied if the debtor acted with reckless disregard for the truth, with the recklessness of the debtor's behavior determined from the totality of the circumstances.  *See Medina v. Paredes* (*In re Paredes*), 2017 WL 2603687, at *4–6 (Bankr. S.D.N.Y. June 15, 2017) (citing *Nat'l Union Fire Ins. Co. v. Bonnanzio* (*In re Bonnanzio*), 91 F.3d 296, 301 (2d Cir. 1996).

14

2.  Section 523(a)(4)

In the Motion, the Plaintiff also invokes section 523(a)(4), which excepts from discharge a debt for "fraud or defalcation while acting in a fiduciary capacity . . . ." 11 U.S.C. § 523(a)(4). "To sustain a cause of action for fraud or defalcation under [section] 523(a)(4), the plaintiff must first establish that the debtor acted while in a fiduciary capacity." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998).  "The mere existence of a fiduciary relationship is not sufficient to deny dischargeability under section 523(a)(4)." *Zohlman v. Zoldan* (*In re Zoldan*), 221 B.R. 79, 87 (Bankr. S.D.N.Y. 1998).  Rather, the court must find that the defendant "was '*acting* in a fiduciary capacity' with respect to the particular conduct giving rise to the liability which is claimed to be non-dischargeable." *Id.* (emphasis in original).  The meaning of fiduciary is a matter of federal law and the term "fiduciary capacity" is narrowly construed.  *See Zohlman*, 226 B.R. at 772; *see also Sandak v. Dobrayel* (*In re Dobrayel*), 287 B.R. 3, 14 (Bankr. S.D.N.Y. 2002) ("The meaning of 'fiduciary capacity' under Federal laws is more restricted than under the more general common law or state definitions.").

Under section 523(a)(4), the term fiduciary capacity "may be an express trust, technical trust, or statutorily imposed trust." *Mirarchi v. Nofer* (*In re Nofer*), 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014).  "[T]he fiduciary relationship must exist prior to the act creating the debt; a trust relationship cannot be said to arise merely from the wrongful conduct itself." *Zohlman*, 226 B.R. at 773; *see also In re Scheller*, 265 B.R. 39, 52 (Bankr. S.D.N.Y. 2001).  Bankruptcy courts "may look to state law to determine whether a trust exists." *Chitester v. Watterson* (*In re Watterson*), 524 B.R. 445, 451 (Bankr. E.D.N.Y. 2015).  Under New York law, a fiduciary relationship "may arise where power and knowledge within a corporation are concentrated in one individual.  Majority shareholders who dominate the corporation's affairs are fiduciaries, and

their powers are held in trust for the benefit of minority shareholders.  Corporate officers and

directors are likewise fiduciaries."  *In re Nofer*, 514 B.R. at 354 (citing cases).

If the defendant was acting in a fiduciary capacity, courts then examine whether the acts

undertaken constitute fraud or defalcation under section 523(a)(4).  *See Zohlman*, 226 B.R. at

775.  The Bankruptcy Code "incorporates the common law elements of fraud, 'includ[ing] a false

representation, scienter, reliance, and harm.'"  *In re Nofer*, 514 B.R. at 355 (quoting *Evans*, 469

F.3d at 283).  Under section 523(a)(4), fraud requires "intentional deceit, and is thus akin to

actual fraud."  *Id.* (citing *Evans*, 469 F.3d at 283; *G.W. White & Son, Inc. v. Tripp* (*In re Tripp*),

189 B.R. 29, 35 (Bankr. N.D.N.Y. 1995)).  Defalcation has been defined as a "misappropriation

or failure to account" and "requires a showing of conscious misbehavior or extreme

recklessness."  *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 68 (2d Cir. 2007).  "Mere

negligence, without some element of intentional wrongdoing, breach of fiduciary duty or other

identifiable misconduct, does not constitute a 'defalcation' within the meaning of section

523(a)(4)."  *In re Scheller*, 265 B.R. at 53 (citation omitted).  Yet, a defalcation "need not rise to

the level of fraud, embezzlement, or misappropriation."  *Id.*  The Supreme Court has held that

defalcation requires "a culpable state of mind" and "where the conduct at issue does not involve

bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong."

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273 (2013).

## III.   DISCUSSION

Applying these legal principles, the Court concludes that the Plaintiff has satisfied the

elements of collateral estoppel, and that the factual allegations set forth in the Fourth Amended

Complaint in the State Court Action establish the elements necessary to find that Deutsch

misrepresented and defrauded the Plaintiff under section 523(a)(2)(A), and committed fraud or

defalcation while acting in a fiduciary capacity under section 523(a)(4).

### A.    New York Law Would Give Preclusive Effect to the Default Judgment

As a preliminary matter, although this Court has previously raised concerns over whether

bankruptcy courts give preclusive effect to default judgments rendered by a New York State

court (*see Soliman*, 515 B.R. at 185), this Court is comfortable that New York State courts would

apply collateral estoppel – and give preclusive effective – to the Default Judgment where the

Defendant has appeared in the State Court Action, defended for a time, and subsequently decided

to stop defending the State Court Action and failed to answer the Fourth Amended Complaint.

Taking the elements of collateral estoppel under New York law in turn, first, the issues

decided in the State Court Action by the Default Judgment were identical to the issues here.

Specifically, counts four through seven in the Fourth Amended Complaint were for common law

and contractual breaches of fiduciary duty, and for fraud.  (*See* Fourth Amended Complaint ¶¶

256–293.)  As discussed below, those issues are the identical issues for nondischargeability of

debt pursuant to sections 523(a)(2)(A) and (a)(4).

Second, the Defendant undisputedly had a full and fair opportunity to contest the State

Court Action.  The Defendant has never disputed that he had notice and service of all pleadings

in the State Court Action – prior to abandoning his defense, the Defendant was actively

participating in the State Court Action.  Notably, the Defendant does not dispute that he

defaulted on the State Court Action, nor does he dispute that his counsel was directed not to

challenge the Default Judgment.  (*See* Motion at Ex. J) (whereby Deutsch's former counsel states

in an email that "I have been instructed by my client to not oppose the motion for a default

judgment").  Deutsch litigated and subsequently decided to stop defending the State Court

17

Action upon the filing of the Fourth Amended Complaint.  Deutsch had a full and fair opportunity to contest the State Court Action, and he will not be allowed to abuse the judicial process and take an "undeserved second bite at the apple."  *See Soliman*, 515 B.R. at 186 (quotations omitted).

It follows that pursuant to New York law on collateral estoppel, Deutsch "admits all traversable allegations in the [Fourth Amended Complaint], including the basic allegation of liability . . . ."  *See Rokina v. Camera King*, 63 N.Y.2d at 729.  The Court will therefore deem true the factual allegations set forth in the Fourth Amended Complaint, and will look to those facts for purposes of nondischargeability of debt pursuant to section 523 of the Bankruptcy Code.

**B.     The Elements of Section 523(a)(2)(A) are Satisfied**

The Court finds that the factual allegations set forth in the Fourth Amended Complaint satisfy the five elements of 523(a)(2)(A).  First, with respect to the first requirement of section 523(a)(2)(A) pertaining to a "false representation," in an affidavit by Deutsch to the Plaintiff's Limited Partners, Deutsch stated that in order to prevent foreclosure upon the Property (which would have had negative tax consequences for the Limited Partners), the Wrap was converted into a 95% limited partnership interest in Plaintiff.  (Fourth Amended Complaint ¶ 281.) Deutsch also stated in the affidavit that in consideration of the discharge of the interest portion of the mortgage debt, the holder of the mortgage was granted a 95% limited partner interest in the Plaintiff.  (*Id*. ¶ 282.)  However, Deutsch failed to disclose that he was the person or entity that discharged the obligation to continue paying the interest portion of the Wrap, and that, as the largest shareholder of the Plaintiff, he was the beneficial interest holder in the refinancing of the Wrap.  (*Id*. ¶¶ 283–84.)

Further, in or about May 2006, certain Limited Partners discovered that Parklex sold (through Deutsch) the Parklex Property. (*Id.* ¶¶ 107–108.) The Limited Partners did not receive any notices, consent forms, or disclosure from Parklex, Parklex Corporation, or Deutsch in regards to the Sale. (*Id.* ¶¶ 109, 110.) The first communication received was on or about May 30, 2006, when some of Parklex's Limited Partners received what Deutsch stated was a partial payment from the proceeds of the Sale. (*Id.* ¶ 111.) The Limited Partners did not have the opportunity to participate in the Sale, and therefore did not have the knowledge necessary to realize the proceeds of the Sale. Moreover, even after not giving notice of the Sale to the Limited Partners, Deutsch, as president of the Parklex Corporation, did not instruct Fidelity to distribute any monies to Parklex's Limited Partners, nor did he instruct Fidelity to distribute any monies to Parklex or Parklex Corporation. (*Id.* ¶¶ 133–34.) Failure to mention those facts to the Limited Partners constituted a blatant omission, which prevented the Plaintiff from participating in the advantages afforded by IRC § 1031 Tax Exchange program. These allegations allow this Court to reach one conclusion – Deutsch defrauded the Plaintiff.

Pursuant to the second requirement under section 523(a)(2)(A), the Plaintiff's well-pled allegations that Deutsch engaged in fraud establish that Deutsch knew his representation was false. Third, Deutsch's intent to deceive can be inferred both from the totality of the circumstance and from Deutsch's numerous false representations and failed disclosures that qualify as a "misstatement of fact which the Debtor [knew or should have known] [would have] induc[ed]" Plaintiff to act. *Ardizzone v. Scialdone (In re Scialdone)*, 533 B.R. 53, 60 (Bankr. S.D.N.Y. 2015) (internal citation omitted); *see also Paredes*, 2016 WL 2603687, at *4-6 (explanation). The totality of the circumstances paints a picture of deceptive conduct by Deutsch, which indicates that he intended to deceive and cheat Plaintiff and its Limited Partners.

*See In re Shaheen*, 111 B.R. at 53.  Even if this Court were to hold that the totality of the circumstances of this case do not indicate his intent to deceive, Deutsch's reckless disregard for the truth in failing to disclose the elements of the Sale to the Limited Partners would support an inference of such intent.

Fourth, this Court also finds that Plaintiff justifiably relied on the false representations and omissions by Deutsch.  The Plaintiff's Limited Partners relied upon the misrepresentations by Deutsch that no change in beneficial interests in the Plaintiff occurred, and that no change in owners of the Property had taken place.  (Fourth Amended Complaint ¶ 290).  As noted, Plaintiff and Plaintiff's Limited Partners failed then to realize proceeds from the Sale and the benefits of the IRC § 1031 Tax Exchange program.  Lastly, as a result, Plaintiff properly alleged (and as the state court found during the Damages Inquest, discussed below) that Plaintiff suffered proximate damages because of the false representations and omissions.  (*Id.* ¶ 291).  Therefore, Plaintiff has properly pled sufficient cause for the non-dischargeability of debt pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

### C.    The Elements of Section 523(a)(4) are Satisfied

The Court also independently finds that the factual allegations set forth in the Fourth Amended Complaint satisfy the elements of section 523(a)(4).  First, the Plaintiff adequately pled that Deutsch was acting in a fiduciary capacity – and breached that fiduciary duty – with respect to the particular conduct giving rise to the liability which is claimed to be non-dischargeable.  (*See id.* ¶ 257 ("Defendant . . . had a fiduciary duty to [Plaintiff] regarding [Plaintiff]'s administration"); *id.* ¶ 260 ("Defendant . . . breached his fiduciary duty to [Plaintiff] when he was involved in self-dealing . . . .").

Moreover, under New York law, the fiduciary relationship also arose because Deutsch's power and knowledge within both Plaintiff and Parklex Corporation were concentrated in only one individual – Deutsch. The Plaintiff established that Deutsch, as majority shareholder, dominated the corporation's affairs. *In re Nofer*, 514 B.R. at 354.

Further, as noted under the section 523(a)(2)(A) analysis, the acts undertaken while in the fiduciary capacity constituted fraud and defalcation under section 523(a)(4). To avoid undue repetition, among the more pungent acts, Deutsch mislead Plaintiff during the Sale process (Fourth Amended Complaint ¶¶ 107–111), engaged in self-dealing during the Sale process by not allowing Plaintiff's Limited Partners to realize proceeds of the Sale (*id*. ¶¶ 133–34), failed to seek consent or approval for the sale of Plaintiff's property (*id*. ¶¶ 109, 110), failed to disclose to Plaintiff and its Limited Partners that Deutsch was taking advantage of certain tax benefits (*id*. ¶ 278), and failed to disclose that there was a change in the beneficial interests of Plaintiff. (*id*. ¶ 284.) This Court finds that the totality of these fraudulent acts equate to a clear breach of Deutsch's fiduciary duties, such that Plaintiff properly pled sufficient cause for the non-dischargeability of debt under section 523(a)(4).

### D.      The State Court Action Damages Inquest was Sufficient

Lastly, in terms of damages, as noted above, where an inquest on damages took place in the state court, the damages judgment resulting from the inquest is viewed as a valid and enforceable judgment, and no further inquest is necessary in this Court. *See Amanat*, 321 B.R. at 37. As part of Plaintiff's Motion, Plaintiff's counsel provided transcripts from the three-day Damages Inquest held by the state court from May 7–10, 2012. (*See* Motion at Ex. C-E.) Plaintiff has also provided a thorough and detailed breakdown from the State Court Action on the precise computation of damages (the "Computation"). (*See id*. at Ex. F.) Deutsch has not

disputed this evidence in the Defendant's Letter.  The Court finds the detailed Computation and

Damages Inquest sufficient, and need not conduct a separate inquest.

### III. CONCLUSION

For the reasons stated above, Deutsch's debt to the Plaintiff resulting from the Default

Judgment is determined to be **NONDISCHARGEABLE**.

**IT IS SO ORDERED**.

Dated: October 18, 2017
       New York, New York

_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge